May it please the Court, my name is Susan Leach, I'm a Deputy Attorney General for the State of California. I'm representing the Governor, the State of California, and the Attorney General. I'm going to split my time this morning with Intervenors' Council. I'm going to take approximately six minutes. She'll have one, and then we'll save three for rebuttal. Following the largest meat recall in U.S. history, including the recall of approximately 37 million pounds of meat from school lunch programs, the California legislature determined that it was necessary to further protect the food supply, the health of Californians, and to ensure the humane treatment of non-ambulatory animals. To do so, they amended Section 599F of the Penal Code. If fairly and narrowly construed, federal law does not expressly or implicitly preempt this particular state law. Narrowly construed, the Federal Meat Inspection Act contemplates that states may make requirements or take action consistent with this meat inspection act, with the Federal Meat Inspection Act. The state law issue here is consistent with this particular federal law, and it does not require any inconsistent action by the swine slaughterhouses. Here, specifically, there is nothing in the federal law, regulations, or directives that require that non-ambulatory animals must be processed for the food supply. Under the Federal Meat Inspection Act, the slaughterhouses have a choice. If an animal passes inspection, including a non-ambulatory pig, the slaughterhouses have a choice whether or not to process that animal for the food supply. Here, in this particular instance, California has eliminated that choice and said and determined that in the interest of public safety, public health, food safety, and humane animal treatment, non-ambulatory swine will not be put in the food supply for an unsuspecting public. Specifically, looking at the express preemption argument, the language of Section 678 of the Federal Meat Inspection Act limits requirements with respect to premises, facilities, and operations. There's another limitation which we're not focused on today. And it limits requirements that the State may make with respect to these particular with respect to the premises, facilities, and operations of federal slaughterhouses. Our argument is that plaintiff's interpretation and the lower court's interpretation of that particular clause was too broad. This particular clause does not encompass all meat inspection. It cannot, because if it did, there would be no reason to carve it out of this particular act. When one looks at Section 678 of the Meat Inspection Act, there are specific clauses with respect to the marking, labeling, and packaging. States cannot add regulations in addition to or different than those particular provisions. In addition, it carves out the premises, facilities, and operations. And our argument is that in this particular example, the State law does not deal with premises, facilities, and operations. It does when it comes to moving the animals. I'm sorry. It does when it comes to moving animals? Yes. I'm sorry. What's your question? You said it doesn't have to do with facilities. But there's a part of this law that deals with moving non-ambulatory animals. It provides certain specific means of moving a sled, a sling, certain devices, whereas Federal law is much broader. It provides other means for moving. That does have to do with facilities, doesn't it? Well, with respect to the State law, if I understand your question, with respect to the State law, it's the requirement is if there's a non-ambulatory animal, it must be immediately euthanized. It must be what? I'm sorry? Killed. No, but Judge Kuczynski is talking about the methods of transporting the animal inside the facility. Correct. You have one method, a sling or something. And the Federal law gives about four methods of moving the animal. Correct. The Federal, there are Federal requirements if the animal is kept alive with how that animal, that non-ambulatory animal may be moved. Or even if you're going to move it to kill it, you don't, you know, they may not want to kill it right there on the spot. It may need to be moved. I mean, I don't know anything about running a, you know, an operation like this, but I can assume that they may not want to sort of say, you know, we need to move the animal to have it euthanized, as you call it. And the Federal law provides certain means for doing it, and the state law is much narrower. So if you're running a national meatpacking plant, you couldn't just use the same facilities in California as you could in Texas or someplace else for moving non-ambulatory animals. Well, you could use the same facilities because the state law, as you pointed out, is more specific or is more narrow. And so they're going to do it. Now, Strutter, it gives you only one way to do it. How long has that state provision been in effect about the method of transporting? It went into effect, or it was supposed to go into effect the beginning of this year. What was in effect in the state law prior to that? There was a section 599F penal code. That section existed prior to that. And it had the same provision about transporting the animal? There were provisions regarding non-ambulatory animals. And, yes, there was a provision, if I understand correctly what you're referring to, about transporting the animal. In the sling? No. With respect to the state law, it was similar or the same to what it is now. So there was no provision in the state law about how the animal was transported via sled. There was no provision before about how it could be transported? In the state law. In the Federal law, to my ---- it did exist at that time, if that's what you're asking, Your Honor. Under the Federal law, how may an animal be moved? I'm sorry? Under the Federal law, how may an animal be moved? A non-ambulatory animal? Yes. Or any animal? A non-ambulatory animal. There are certain methods, including a sled. A sling or stone boat. Exactly. That's also in the state law. The state law ---- My suggestion is that these are not really incompatible. That the state law is consistent with the Federal law. Is that true? Yes, it is consistent with it. The Federal law allows dragging. Pardon me? Does the Federal law allow dragging? Allow, pardon me? Dragging. You say it. Dragging. Thank you. Dragging. The Federal law, does the Federal law allow dragging? It does not allow dragging. In the sense that ---- So both of them, neither of them allows dragging. No. The state law does not allow dragging. Your position is that there are no means under Federal law to move that are not also permissible under state law? Let me step back. In terms of dragging, dragging if an animal is put on a stone boat or a sled or something like that, I wouldn't consider that dragging when they're moving it in that method. I understand. Okay. So your position is that the state law and the Federal law are not, there are no means permissible under Federal law that are not also permissible under state law for moving the animal? Correct. That the state law is more specific, has more specific provisions than the ---- Well, I'm not sure what that means. Correct is an answer I can understand. Correct with an explanation makes me worry that maybe correct doesn't mean correct. It means, yes, there are some means. I'm going to, in the interest of time, give some time to the intervener's counsel and then come back for rebuttal. Thank you. May it please the Court. I'm Sarah Conant, and I represent the defendant interveners in this case. I'd like to take a step back for a moment and point out that the statute of issue is not one prohibition, but seven separate and distinct prohibitions. Much of what we've discussed so far today has been focusing on one of those, which is subsection E. But when the Court issued its blanket order in joining the entire statute, it threw out portions of the statute that aren't even at issue in this case. Two of the subsections regulate transporting animals to the slaughterhouse, and the Meat Association has not argued that these are preempted under the Federal law. Other sections of the statute require a different preemption analysis and admittedly are a closer call. Subsection E is one we discussed, and that one, subsection E, was in the statute prior to the current amendment. It was enacted in the statute in 1994 as subsection C regarding the movement of animals. And actually, that portion of the statute was used to bring charges and convictions against employees of the federally inspected Hallmark Slaughterhouse for moving animals with forklifts. The old statute said it will be moved with a sling or a stone boat or other sled-like or wheeled conveyance. And that's been the law in California for about 15 years. Yes, that's correct. And the new one says sling or stone boat or other sled-like conveyance. It doesn't seem to be much different than it's always been. No, Your Honor. That portion of the law is identical. The only change is that it was previously numbered as subsection C and it's now subsection E. And nobody's gotten an injunction for 15 years about that. That's correct. In our reply brief, we discuss each of the prohibitions in the statute separately And do you agree that when compared to federal law, whatever means is permissible in the state law is also permissible in the federal law and vice versa? I'm sorry, I don't know if I understand the question. Moving animals. Moving animals is very similar between the federal and the state law. Neither one of them allow the dragging of animals who can't stand and walk. And the means allowed by federal law are not? There's nothing allowed by federal law that's not also allowed by state law? I don't believe so, Your Honor. At a bare minimum, we ask that this Court reverse the district court's order because it was overbroad. And as I said, it threw out portions of the statute which apply to conduct that happens long before the animals, even get to the slaughterhouse. And if I can, I'd like to reserve the rest of my time, but thank you. Okay, thank you. We'll hear from the other side. May it please the Court, Stephen Wells from Dorsey & Whitney on behalf of the National Meat Association. I'm here today with my colleague, Heather McCann. Your Honor, I would like to spend my allotted time on the subject of the express preemption, because I think express preemption is clear here and because it is dispositive. Congress established one set of rules with respect to the humane treatment, with respect to the handling, and with respect to the inspection of animals that are at a federally regulated slaughterhouse. NMA's members, well, those rules and those regulations have certain requirements with respect to humane handling and inspection. They allow both the inspectors and the slaughterhouse to make certain choices, and they start at the gate of the slaughterhouse. And NMA's members want to be able to comply with the requirements to make the choices they're allowed to make under Federal law, and not fear that they will have to go to jail as a result. It's clear from Section 678 that there is Federal preemption in this case with respect to any matter within the scope of the chapter, which includes inspection, it includes humane handling, and it includes quality issues such as adulteration. And it is also clear that that regulation starts at the gate of the slaughterhouse. We have cataloged the regulations and the laws that talk about the point at which Federal regulation kicks in. How about before the gate of the slaughterhouse? If California wants to say you can't sell pork in California, can they do that? I think they can, Your Honor. I think they say we don't want to sell disabled pork in California. Can they say that? No, I don't think they can say that, because once ñ because whether or not a cattle or swine, and swine is an issue here, whether or not they're disabled, that is something that occurs on the premises or may occur on the premises of ñ Suppose it's disabled before it gets to the slaughterhouse. Disabled before it gets to the slaughterhouse. Your Honor, I can say that that's not what this lawsuit is about, and I can say that we are not seeking to enjoin the State. Well, it says no slaughterhouse can basically acquire disabled animals. Well, if it's receipt, Your Honor, and if the question is can the State say that a slaughterhouse can't receive a non-ambulatory animal, the answer to that question is clearly no. And that has to do with the way that the slaughterhouse operates and the way that the law operates. As soon as the truck transport with hogs cross the line, it is very clear from the regulations, and we've cataloged them, that the Federal regulation takes over at that point. And that's when inspectors can actually do an inspection on the transport. Pigs can become non-ambulatory at any point. So it could happen during inspection. It could happen after inspection. But before inspection, what happens? What about before inspection? Pardon me, Your Honor? Before inspection, what happens before inspection? Well, there is ñ there are humane handling requirements that address non-ambulatory hogs. Can California legislate that? No. Not once it crosses the ñ not once the transport crosses the threshold of the slaughterhouse. Before ñ But if you buy, if you tell them and ask can you buy it, it doesn't cross the threshold before you buy it. Before ñ I'm sorry? Before you buy it. You can't buy a non-ambulatory pig. Well, Your Honor, if the State had a law that said that at the point of ñ at the time of sale that farms can't sell, that might be a different issue. Well, it says here, the statute says no slaughterhouse shall buy a non-ambulatory animal. That's the first section. The problem, Your Honor, is what happens when the animal that is purchased is ambulatory, but when it gets to or after the threshold of the slaughterhouse becomes non-ambulatory? Well, that's not what it says. You can't buy it. It doesn't say that after you get it in the slaughterhouse. I'm talking about Section A. No slaughterhouse shall buy a non-ambulatory. Well, it also says it won't receive either. Well, I'm talking about buy or sell. Right. And I think if the law was tailored more clearly to a situation in which you would know at the time that the title transferred that you knew that there was some way to detect that a pig was non-ambulatory, that might be a different story. But that's not – there's nothing in the record to suggest that that's the case. In what way – excuse me. I didn't want to step on your answer there. In what way does Section E that deals with how the animals may be moved, in what way does this contradict Federal law? Well, Your Honor, what is unclear to me from the California scheme is how you can move a non-ambulatory animal when Section C requires that it be immediately euthanized. I think there's an inherent contradiction there. And so I'm not – frankly, I don't know how they reconcile the two, and I've never heard the State try to reconcile those two. But with respect to just the movement itself, my recollection of the regulations is, and we've cited them, that those are – that the movement, putting them on a sled or on a – on a mobile – some sort of mobile transport is fairly consistent with what is in the – And 678 allows the State to enact laws that are consistent, right? It does if they're identical under the law. Well, it says consistent. It doesn't say identical. It says consistent. Well, this Court has held in the National Broiler Council v. Voss is that they have to be identical. This Court said that the words different from or in addition to mean identical, that that's what that means. Okay. You're talking about the first – the first sentence or two of that section? You're talking about the first sentence or two of that section. I'm talking about the last sentence. This chapter shall not preclude any State from making requirements or taking other action consistent with this chapter. With respect to other matters. And I'm trying to figure out in what way this section is inconsistent. Section E? Section E, yeah. Well, Your Honor, it's not identical. I'll say that. It's what? It's not identical. If the – if the Court reads, for example, some of the question and answers, there is – there are differences. They may not be extreme differences, but there are minor differences between the way the Federal regulations read with respect to transport and the way the State law reads. Let me ask you another question. That's the public interest. Yes, Your Honor. The failure to weigh the public interest properly is grounds for reversal in a – in an injunction case under last year's winter decision in the Supreme Court. The judges I read it here discarded California's interest in protecting the public health and protecting humane treatment of the animals by saying, well, that wasn't very important. What's really important is that this will diminish the meat supply. Your Honor, I disagree with that characterization. I think that's the way – that's the way the State and humane society read it. No, that's the way I read it, not what the State said. I read the decision, and that's what it appeared to me, that he was concerned on one side with the fact that we'd have a little less pork, and on the other side that California's interest was protected by the Federal statute, which California did not agree. California was aware of the Federal statute and said that this does not protect our interest sufficiently. We have an interest in public health that is not adequately protected by the Federal statute. Therefore, we want to go beyond the Federal statute. He said, no, California's interest is protected by the Federal statute. Right. And that's the distinction I would make, Your Honor, is that he said that California's interest, the interests that were enunciated by California. He's disagreeing with the California legislature, which believes that the people of the State have a greater interest in health and treatment of animals than is provided in the Federal statute. And the judge just dismissed the legislature's interest by saying, well, that doesn't mean much when you compare it to the pork we're going to lose. Well, I don't know how much pork we're going to lose by not having the ability to eat nonambulatory pigs. And I don't see anything in the record that shows us that we have public interest is going to be seriously affected by not eating some nonambulatory pigs. Well, Your Honor, I think there are several responses to that. One is I think you're correct that the Court did say that the Federal interest protected the interests that were enunciated by the State. And, in fact, I think that that's right. They deal with humane handling, and they deal with the inspection process to make sure that they're able to meet the requirements. But you and the judge disagree with the legislature in California. No. That's just one point, Your Honor. The second point is there is a – there is a – certainly a Federal public interest in the uniform application of the laws. And that is clearly expressed by Congress. That public interest was – is not addressed at all by the State or the Humane Society. There's a comprehensive set of regulations that Congress has said will control in this situation. And to say that California gets to say no, it seems to me, is – is in threat. I would also add, Your Honor – and I see that my time is up, so I'll stop. That's okay. I don't recall seeing the Court considering that public interest in uniformity. Well, I don't think it's expressed, Your Honor. But I think that there is a clear Federal – Federal public interest in uniformity. Can you remind me once again the contradiction here? I mean, the Federal law says if you're going to slaughter animals, this is how you do it. And California says we exclude certain class of animals from slaughter. Horses, I recall California passed a law some years back banning horse meat from human consumption. What's the contradiction here? I don't understand. I mean, they say, like, if you bring it to be slaughtered, you're going to have to follow these procedures. But California says there are certain things you're not going to be able to slaughter. Well, remember, we're talking about humane handling and – and inspection, first off. But second, the – that type of meat argument, Your Honor, I think it stems from that. So you may be talking about humane handling and inspection. I wasn't asking that. The Fifth and – Did you hear my question? I did, Your Honor. And – Okay. Do you want to answer that question? I'm trying. I will try, Your Honor. I'll do my best. The Fifth and Seventh Circuit have – Let me sort of throw out something that doesn't have anything to do with it, just to – Well, the Fifth and Seventh Circuit, Your Honor, have – have said that a State may exclude kind of species or – Forget about what the Fifth and Seventh Circuit said. I know what the Fifth and Seventh Circuit said. You can't – they can ban rats, yes. But – but I – I – what's the contradiction here? Well – Just in plain – plain English. Just, you know – Because one – because here's plain English, Your Honor. A horse is a horse before it ever gets to the – to the slaughterhouse. It's a horse before it crosses the threshold of the slaughterhouse, and it's a horse after it crosses the threshold of the slaughterhouse. You know, the district judge said that, but I didn't understand then. And just repeating it here doesn't – doesn't make me understand it. Where's the contradiction? The Federal Government says, if you bring it to slaughter, you'll follow these procedures. California says, these are the things you're not going to slaughter. Animals starting with – whose first letter of their name starts with P, for example, or – you know, whatever decision that California makes, it says, you're just not going to slaughter these animals. It's a – it's a – because the kind of animals – Where's the – where's the contradiction? Because the kind of – because the characteristic – the defining quality that they've seized on here is not species, but something that actually occurs at a time. I didn't say anything about species. I'm asking you where the contradiction is. That's – that's – well, I think that's the contradiction. What's the contradiction? You can't – you can't make a law that says, if during the Federal inspection process, a characteristic occurs in certain animals, suddenly the Federal inspection process stops. Because California says, you will not slaughter. But what happens when the animals – You have nothing to look at. And what happens when the animals go down during the – during the inspection process? You kill them and dispose of them. That's – that is controlled by Federal law. Where's the contradiction? That's the problem. Pardon me? No, you say it's controlled by – where's the contradiction? Is there something about Federal law that says, you may not – I mean, let's say you have a – let's say you have a slaughterhouse. Is it called slaughterhouse? Whatever that is. And they are run by people who are particularly conscientious about the suffering of animals. You know what I'm saying? And they say, you know, we as a voluntary matter will not kill any animal that is pregnant or that is sick. We just won't do it. It's a matter of our personal conscience. And because we think that's a good way of running a business, we will simply not slaughter these kind of animals. Does Federal law say you've got to do it? Federal law says that you have a choice. How about starting with a yes or no? Does Federal law say you have to slaughter those animals even though the operator of the slaughterhouse thinks it's immoral? In certain conditions, I think that they do. When it's been tagged as U.S. condemned and it's showing signs of disease. Could California say you can't sell pork that hasn't been raised on corn, something like that? Only corn-raised animals can be used for food. No, Your Honor. I don't think that that would – I don't think you can define a – How about veal? Because that would be – I think that would be an adulteration issue. How about veal? Veal, you can't sell – This seems to me to be a closer question. It's more like a type of meat. It's a characteristic that's immutable. You can tell what it is before it ever gets to the slaughterhouse. It can be excluded before it gets to the slaughterhouse. I'm sorry. I didn't understand the answer to my question. So you say that – you said that California or the Federal law can force an operator of a slaughterhouse to slaughter animals that it believes should not be slaughtered? The language would say that, Your Honor. The language says shall be separated and shall be put into a pen. And then it says shall be passed for slaughter. That's the language of the Federal statutes. So if an operator of a slaughterhouse said, no, we think that any pig less than 12 months old, you know, is too young to be slaughtered, we will, as a matter of ethical matter, we will not do it, they are forced by Federal law to slaughter them anyway. That's your position? It would depend on what the Federal law says. Well, even if somebody ran a slaughterhouse and said, we want to advertise that in our slaughterhouse we don't use non-ambulatory pigs. We only use healthy, fully ambulatory pigs. It couldn't do it because it's required to slaughter the non-ambulatory pigs and use them. No, I don't think a Federal – I don't think a Federally regulated slaughterhouse, I think they can control which pigs they choose to accept. No, no. Accept. But they accept them and they're healthy. And then they become non-ambulatory. And you say that I gather in answer to Judge Kaczynski's problem they're required to slaughter them and use them. If they get to a certain point and they're tagged as U.S. suspect or U.S. condemned Well, of course if Federal law says you can't do it, they can't do it. You are answering, giving a trivial case. I'm assuming that Federal law says it's okay to do it. Your position is even though they, you know, for good public relations purposes or out of conscience, they say we will not slaughter non-ambulatory cattle and we will advertise this. We'll say, you know, buy our meat because we only slaughter healthy cattle. Your position is that they'd have to do it anyway. No, Your Honor. Now I understand your question better. The regulations say that they may take out non-ambulatory swine or animals with the permission of the inspector. I believe that's what the regulations say. In other words, the Federal government is still involved. The inspector can prevent them from upgrading their quality and advertising we only sell healthy pigs? If the inspector tells them they've got to use these non-ambulatory ones, they've got to do it? Well, I think the permission probably goes to the health and welfare of the animal. What if they want to say we only slaughter free-range animals, animals that graze freely and don't, you know, you know what free-range means. Yes. So they say, you know, we are an ethical slaughterhouse. We only want to – we only slaughter free-range meat. Is your position that Federal law requires them to slaughter other kinds of animals as well? No, I don't think that – no, I don't think that is my position. Well, if they can do it voluntarily, why can't they stay at law prohibitive? If they, without contradicting Federal law, can desist from slaughtering these animals voluntarily, why can't State law say you won't do it without contradiction? That, I think, is the crux, Your Honor, because it does – it contradicts the Federal law, which gives you a choice. In other words, under the Federal scheme, there are certain choices. Now, the Federal scheme is preemptive, and that means under certain circumstances you may pull the animal with the permission of the inspector, but you may also exercise the choice to go forward and slaughter that animal. And what the problem is here is that the State's law is you may not. The Federal law is you may or may not. And may not is different than or in addition to may not or may. So you see the Federal interest as being protected here is not health or safety or anything like that, but the choice of the slaughterhouse. That's the crux of the Federal law. No. I think it's integral to the – I think that that choice and the way that this operates is integral to health and safety and humane treatment. It is integral, and Congress has said that it's integral. It did? Where is that? Why do they say choice? Because it says one – because it says there's one set of rules here. This is the set of rules. And if the rules allow – if the rules allow a choice, then Congress has said you get to make that choice. And you don't go to jail because California says you don't get to make the choice. You don't go to Federal jail. Pardon me? You don't go to Federal prison. Well, that's true. We have very nice prisons in California. Very nice. And they're soon going to be very much nicer. Soon they'll be very even nicer. Okay. Thank you. Thank you, Your Honor. You know, while you were sitting down, I was looking at the regulations, and Section 313.2d.2 says that dragging of disabled animals and other animals unable to move while conscious is prohibited. Stunned animals may, however, be dragged.  Of stunned animals? Yes. Yes. With respect to the – So it wasn't quite right to say that Federal law does not permit dragging. Correct. I should have qualified that only if the animal has been stunned. Well, I think the answer would have been no instead of yes. It would have been sort of the opposite. I'm sorry? So there are instances, there are things that Federal law permits that State law does not permit. Correct. But there are instances in transporting animals where the Federal law does permit that, the dragging of animals when they are stunned. And there are some other methods as well, right? Other methods under Federal law? Yeah. Of transporting the animal that are different than the transport provided under State law. Right. Correct. Okay. But with respect to non-ambulatory animals, the State law does not require any additional or does not provide any different than – excuse me, let's step back. The State law doesn't provide any additional methods of transportation or transit. Well, I mean, Federal law is quite open. It says suitable for that purpose, e.g., stone boats. Right. That allows a whole wide range of things, as well as California law provides for very specific. It doesn't provide for stone boats, too? Yes, it does. But if it's on a stone boat. It doesn't matter because this is E.G. stone boats. It says among other things stone boats, suggesting that. And the description is equipment suitable for such purposes. It could be a forklift. A forklift could be suitable for such purposes. Has that conflict existed for 14 years? That's the Federal. I'm sorry, that's the Federal. But under the State, the State has had the same requirement for the last 14 or 15 years about transportation or the transit of an animal. I understand. But they are different, right? Federal law arguably allows moving with a forklift, right? You're reading the forklift as the E.G. stone boat? I would argue that a stone boat is different than a forklift. I don't know what that means. Right. I would argue that a forklift is different than a stone boat. A stone boat is, in my knowledge, is something that you can place the animal on, drag the stone boat, and the animal is not necessarily poked or prodded with a forklift. A forklift, when picking up the animal, one may, when scooping up the animal, poke or prod them. The stone boat is slightly different in my estimation. But I don't think it's defined in the directives or the regulations. But you are correct. It is an E.G. stone boat. Do you have anything specially important for us to hear? Yes. I just have two quick points. The Federal slaughterhouse is not a sanctuary. So when an animal enters the Federal slaughterhouse, it doesn't suddenly not have to apply with state law. There are other state laws that a slaughterhouse that is federally inspected has to comply with, including health and safety and labor laws. So simply because an animal becomes nonambulatory on the property of a Federal slaughterhouse, that is no protection that it's on the property of the slaughterhouse. And secondly, there is no requirement that an animal must be slaughtered. The shall in the Federal requirements is if that animal is eventually going to end up in the food supply in our supermarkets, then it shall be treated in such a manner. It shall go through certain inspections. And so that shall is only if the animal will end up eventually in our supermarkets. What about the argument that Federal law preserves the choice of the slaughterhouse, whereas state law precludes it and there is a contradiction? Well, I don't think that the Federal Meat Inspection Act, the purpose of that is not to provide choices for the slaughterhouses. The purpose of that, as described in the Ninth Circuit cases on the Federal Meat Inspection Act and the Fifth and Seventh, is to provide a standard of inspection that will produce wholesome, non-adulterated food. And there's nothing and no argument has been made, nor did the lower court find, that this state law will violate that purpose, that it will provide unwholesome or unadulterated, or excuse me, adulterated food to the food supply. So I think the purpose of the Federal Act, seen in Section 602 and discussed in the cases, is that, to provide wholesome and non-adulterated food. And the state law meets that goal. All right. Thank you. The case is argued and will stand submitted. We are adjourned.
judges: Kozinski, Reinhardt, Silverman